715 So.2d 1253 (1998)
Robert TRAYLOR and Amy Traylor, et al.
v.
RELIANCE INSURANCE COMPANY, et al.
No. 98-C-1379.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1998.
*1254 Christopher J. Aubert, David J. Schexnaydre, Aubert & Pajares, Metairie, for Relators.
J. Van Robichaux, Jr., Sherry A. King, Chalmette, for Respondents.
Glenn A. Diaz, Chalmette, for Respondent.
Before BYRNES, WALTZER and MURRAY, JJ.
BYRNES, Judge.
This personal injury action arises out of a March 21, 1995 automobile accident. Plaintiffs, Robert Traylor and Amy Traylor, individually and on behalf of their minor child, Brandon Traylor, filed this suit on January 18, 1996, seeking damages incurred as a result of injuries sustained by Mr. Traylor in the accident. Named as defendants were relators, Jeffery Smith, the driver of the other vehicle involved in the accident, his employer, Westinghouse Electric Company, and its insurer, Reliance Insurance Company, along with other defendants, State Farm Mutual Automobile Insurance Company, plaintiffs' UM carrier, and Reliance National Indemnity Co., also providing UM coverage for the vehicle driven by Mr. Traylor. On June 18, 1997, plaintiffs filed a First Supplemental and Amending Petition, adding defendants Barriere Construction Company, Inc. and Barriere Construction, L.L.C., against whom defendants had filed a third-party demand.
On February 17, 1998, while trial of the main demand was in progress, the trial court granted leave to Merrie Lee Kraemer to file a petition of intervention on behalf of her minor child, nine-year old Laura Lynn Kraemer, alleging that Laura Lynn Kraemer was the illegitimate, acknowledged child of Mr. Traylor, and praying for damages for loss of consortium. Relators filed a peremptory exception of prescription, which was denied by the trial court in an oral ruling on May 15, 1998. The relators ask this Court to reverse this ruling in their writ application.
Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. If the face of the petition shows that the prescriptive period has elapsed, the plaintiff has the burden of proving prescription has not run. Hoerner v. Wesley-Jensen, Inc., 95-0553, p. 3 (La.App. 4 Cir. 11/20/96), 684 So.2d 508, 510, writs denied, 96-3047, 96-3054 (La.2/7/97), 68 So.2d 501. However, the evidence must be strictly construed against prescription and in favor of maintaining the obligation sought to be extinguished. Id.
Relators aver that, pursuant to LSA-C.C.P. art. 1067, respondent's petition of intervention was filed untimely. LSA-C.C.P. art. 1067 provides:
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand.
A petition of intervention is an incidental demand. LSA-C.C.P. art. 1031. LSA-C.C.P. art. 1067 applies to all petitions of intervention. Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268 (reversing this Court's holding in Moore v. Gencorp, Inc., 615 So.2d 1092 (La.App. 4 Cir.1993), that LSA-C.C.P. art. 1067 did not apply to incidental demands filed by non-party plaintiffs with independent causes of action). The term "main demand" encompasses both original and amending petitions that relate back to the date of the filing of the original petition pursuant to LSA-C.C.P. art. 1153. Id; Keller v. Townsley, 462 So.2d 264 (La.App. 1 *1255 Cir.1984). LSA-C.C.P. art. 1067 has been characterized by this Court as an exemption statute, which exempts any incidental demand from any applicable prescriptive statute whose prescriptive period would accrue during the ninety-day period from the date of service of the main demand or third-party demand. Kelly v. Louisiana Stadium and Exposition District, 380 So.2d 669 (La.App. 4 Cir.1980).
Original plaintiffs' first supplemental and amending petition contains a certificate of service dated June 17, 1997. Ms. Kraemer's intervention was filed on February 17, 1998, over eight months later. Therefore, LSA-C.C.P. art. 1067 does not operate to allow Ms. Kraemer to defeat the prescriptive bar of LSA-C.C. 3447.
LSA-C.C.P. art. 1067 was created by Act 472 of 1970 in order "to permit, in certain circumstances, the institution of reconventional demands on which prescription had run." Thus, LSA-C.C.P. art. 1067 was enacted for the purpose of providing additional opportunities for filing reconventional demands which would not have been available prior to Act 472 of 1970. The purpose of Act 472 of 1970 was not intended to impose new limits on the class of permitted reconventional demands. Act 472 of 1970 was an act of expansion of possibilities, not an act intended to impose limits on existing opportunities. In other words, all reconventional demands that would have been timely prior to the enactment of Act 472 of 1970 remained timely. But, in addition thereto, Act 472 of 1970 created the new class of permitted reconventional demands, i.e., those filed after prescription would normally have run, but within 90 days of the filing of the main demand.[1]
Subsequently, Act 86 of 1974 amended LSA-C.C.P. art. 1067 so that its scope was expanded to encompass not just reconventional demands that might otherwise have prescribed, but also all "prescribed incidental or third party demands." In the case of incidental demands, a grace period is granted of 90 days from service of the main demand, provided that the incidental demand had not prescribed at the time the main demand was filed. Like Act 472 of 1970, Act 86 of 1974, is an act creating expanded possibilities. It was not intended to in any way create new restrictions on the class of timely incidental demands. In other words, all those incidental demands that would have been timely prior to Act 86 of 1974 remain timely; but in addition thereto, Act 86 creates a new class of timely incidental demands. To put it still another way, an incidental demand that might not fall within the grace period of Article 1067, would be permitted if allowable on any other basis.
Therefore, the fact that Article 1067 does not apply in this case (because it is uncontested that the intervention was not filed within ninety days after service of the main demand and the supplemental demand) is not necessarily fatal to the respondent's intervention.
The respondent-intervenor asserts that as Robert Traylor's acknowledged daughter, her claim for loss of consortium arising out of her father's injuries puts her in the same category of plaintiff as Traylor's legitimate son Brandon who asserted a similar claim in the original and supplemental petitions in the main demand. The respondent asserts that: "The respondent intervenor relies upon the Supreme Court decision in Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La. 1985), which held that prescription was interrupted on behalf of the intervenors by the timely filing of an original petition by their relatives who were in substantially the same position as to the decedent." Giroir made no such general statement. Giroir was limited to a holding that an amended petition adding an additional party plaintiff after the expiration of the prescriptive period would be allowed under LSA-C.C.P. art. 1153 to relate back to the timely filing of the original petition where the amendment satisfied the following four criteria:
(1) the amended claim arises out of the same conduct, transaction, or occurrence *1256 set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
Giroir, at 1044.
Where these criteria are met the Giroir court reasoned[2] that "no essential protective purpose of the prescriptive statute is violated by permitting relation back of the post prescription amendment based on the same factual situation pleaded in the original timely petition," because:
The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect him from stale claims and from loss of non-preservation of relevant proof. They are designed to protect him against pleading mistakes that his opponent makes in filing the formal claim within the period.
Giroir, at 1045.
The first and third of the above delineated Giroir criteria are clearly met by the respondent's intervention, and we will assume for purposes of argument that the fourth has also been met. However, it cannot be said that the second was met. In Giroir the court noted that:
"The defendants knew or should have known of the existence and involvement of the Giroir children: First, because the facts in the original petition gave defendants notice of, and did not negative, the reasonable possibility that a surviving child of the deceased 55 year old married woman would be entitled to recover as a survivor or wrongful death beneficiary under Civil Code article 2315 and might later assert a claim; Second, because SLMC received actual notice that Mrs. Giroir had children and grandchildren ..."
[Emphasis added.]
It is significant that the Giroir court found that the defendant had actual notice of the potential additional plaintiffs. In the instant case the respondent-intervenor does not contend that the relators-defendants had timely actual notice of the existence of Traylor's illegitimate daughter. Moreover, the defendants would not have inferred the possible existence of the illegitimate intervenor in the instant as the Giroir court suggested might be done under the facts of that case. In this case, where Robert Traylor filed suit not only on behalf of himself, but also on behalf of his minor son, any reasonable defendant would infer (in a manner analogous to the legal maxim, "inclusio unius est exclusio alterius") that had Traylor had additional progeny he would have included them in the suit. Of course, the existence of additional illegitimate children is always a possibility, but only in the sense that anything is possible. The fact that there is always the vague and remote possibility of the existence of unknown illegitimate offspring is not such notice of the "existence and involvement of the new plaintiff" as would satisfy the second Giroir requirement. Nor is there any indication that "the facts in the original petition gave defendants notice" as the court in Giroir found to be the case.
Of even greater significance is the fact that in Giroir the court was dealing with LSA-C.C.P. art. 1153 which specifically provides for the relation back of an amended petition. The intervention in the instant case did not take the form of an amended petition. We recognize that it is not always the caption on a pleading that determines its substance. In that regard, intervenor argues that because intervenor could have been joined as a plaintiff in the original petition, or added later by an amendment as was done in Giroir (assuming the amendment was either within the prescriptive period or was beyond the prescriptive period, but met the four Giroir requirements and, therefore, related back) the intervention should be treated as an amended petition and not as an intervention. The fact that the intervention was not entitled "Amended Petition" or "Supplemental Petition" is not the reason this Court finds that the intervention in the *1257 instant case is not an amended petition under LSA-C.C.P. art. 1153, although it is an indication that the intervenor did not believe it to be such at the time it was filed. Instead this Court finds that the intervention is not an amendment in substance. An amendment to a pleading cannot be made unilaterally without the participation of the party or parties to the pleading sought to be amended. The original plaintiffs did not participate in the intervention. Intervenor does not contend that the original plaintiffs have annexed or incorporated the intervention into their claims. The attorneys handling the intervention are not the same attorneys as those handling the claims of the original plaintiffs. The attorneys for the original plaintiffs have gone on record as opposing the intervention if it should retard the progress of the main demand. The fact that intervenor could have been added by the original plaintiffs to their suit by way of amendment to their original petition does not make the intervention an amendmentand LSA-C.C.P. art. 1153 applies only to amendments.
In her opposition to this writ application, intervenor also contends that because she is an illegitimate minor she could not proceed until such time as a tutor had been appointed for her. LSA-C.C.P. art. 683B. It does not appear that the intervenor raised this issue in the trial court. But the relators in their dilatory exception of lack of procedural capacity, which they asserted in the same pleading that contained the exception of prescription now before this Court, effectively acknowledged that no tutor had been appointed for intervenor at the time the intervention was filed by alleging that: "There is no evidence presented with the Petition of Intervention that Merri Lee Kraemer was ever appointed as Laura Lynn's tutor by a Louisiana court." Intervenor contends that until a tutor was appointed to represent her, there was a legal cause preventing intervenor from asserting her claim. Intervenor concludes that under the doctrine of contra non valentem as long as this procedural incapacity existed, prescription did not run. However, LSA-C.C. art. 3468 states that:
Prescription runs against absent persons and incompetents, including minors and interdicts, unless exception is established by legislation. [Emphasis added.]
Intervenor has cited no exception "established by legislation" that would suspend the time for filing the intervention until such time as a tutor has been appointed to represent the minor intervenor, and this Court is aware of no such exception. Moreover, we note that the intervenor makes no allegation that the relators did anything to prevent her from filing her intervention on a more timely basis. Of even greater importance is the fact that if we were to adopt intervenor's theory of contra non valentem regarding the suspension of prescription during minority it would make a mockery of LSA-C.C. art. 3468 which would be virtually repealed as regards minors. We recognize that when enforcing LSA-C.C. art. 3468 against unrepresented minors it means that we are saying that unrepresented minors should be aware of their rights and assert them. However, in enacting LSA-C.C. art. 3468 the legislature could not have been unaware of the potential for what seems to be a rather harsh result, and must have made the policy determination that the public policy benefits of prescription must outweigh the risk of the loss of rights by minors. Moreover, we note that as was intended by LSA-C.C. art. 3438, whenever it appears that there is a class of minority plaintiffs who are unreasonably impacted by the effects of LSA-C.C. art. 3438, the legislature has enacted relief from the effects of prescription. For example, see LSA-C.C. arts. 3469, 3492, 3496.1, 3497. It is especially significant that LSA-C.C. art. 3469, dealing with the suspension of prescription generally, does not include the claims of minors against tortfeasors, and LSA-C.C. art. 3492, which deals specifically with delictual actions, suspends prescription as to minors only "in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage." See Hall v. Hall, 516 So.2d 119 (La.1987). Accordingly, we find no merit to intervenor's contention that her minority in any way suspended the running of prescription against her intervention. Plaintiff failed to carry her burden of proof to show that prescription did not run on her *1258 intervention where it had prescribed on the face of the record.
For the foregoing reasons we find that the relators' exception of prescription is well founded. Accordingly, we reverse the judgment of the trial court and render judgment in favor of the relators, dismissing the intervention at intervenor's cost.
WRIT GRANTED; JUDGMENT REVERSED AND RENDERED.
MURRAY, J., concurs.
NOTES
[1] "Main demand" includes supplemental and amended petitions that relate back under LSA-C.C.P. art. 1153. Giroir v. South Louisiana Medical Center, Div. of Hospitals, 475 So.2d 1040 (La.1985).
[2] 475 So.2d at 1045.