JOHNSON, Justice.
hWe granted this writ application to address whether a third joarty claim for indemnity, which was filed three years after the main demand was served, is prescribed. The lower courts held that because the City of New Orleans (New Orleans Aviation Board) filed its third party demand three years after the principal demand was filed, its demand was prescribed under both LSA-C.C.P. art. 1067 and LSA-C.C. art. 3492. However, it is well settled that prescription does not commence on a claim for indemnity or contribution until the party seeking it has sustained a loss, either through payment, settlement or an enforceable judgment. For the following reasons, we reverse the rulings of the lower courts and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
This matter arrived in this Court in a pre-trial posture; therefore, the facts have been extrapolated from the various pleadings. On June 6, 2001, Exceptional ^Temporaries Inc., (“ETI”) entered into a contract with the City of New Orleans Aviation Board (“NOAB”) to provide sound-deadening insulation to residences in close proximity to Louis Armstrong Airport as part of the Airport Capital Improvements Program. On October 8, 2001, ■plaintiffs, Frances Orlando and Nicholas Reggio, contracted with NOAB to have their Kenner residence insulated. The work actually began on or about March 23, 2002. In the process of renovating the house, ETI allegedly broke a window’s glass, then failed to remove some pieces of the broken glass. Frances Orlando alleged that she stepped on the glass and cut her foot on April 21, 2002, causing severe bodily injuries. On March 7, 2003, she and her husband filed suit against ETI and *953 NOAB alleging negligence on the part of NOAB in contracting with ETI to perform the repairs, and negligence on the part of ETI in performing “shoddy work in violation of LSA-C.C. art. 2762.”[1] NOAB was served with the petition on March 26, 2003. ETI was never served with the original petition.
On February 27, 2006, NOAB filed a Third Party Demand against ETI, seeking contribution and/or indemnity for damages arising out of the plaintiffs’ tort claim. Particularly, NOAB argued that it “is entitled to complete indemnity and/or contribution from ... ETI to the degree that the accident sued upon was caused ... by the negligence and/or strict liability of ETI.” ETI filed an exception of prescription based on LSA-C.C.P. art. 1067, which the trial court maintained, dismissing NOAB’s third party demand.
|aThe trial court noted that NOAB filed its third party demand almost three years after the main demand was filed and served. Although NOAB alleged a cause of action in contract, pursuant to an indemnity provision, the trial court determined that the contract between ETI and NOAB contains no such provision. The court held that NOAB’s cause of action sounded in tort, and concluded that because NOAB brought suit against ETI more than 90 days after service of the main demand, pursuant to LSA-C.C.P. art. 1067, NOAB’s third party demand was prescribed.
In affirming the trial court’s ruling, the court of appeal found that the main demand clearly alleged a claim in tort, with a one year prescriptive period, although NOAB argued that a quasi contract existed between the parties. Reggio v. E.T.I., 07-0049 (La.App. 4 Cir. 6/13/07), 961 So.2d 1269. The court of appeal also concluded that there was no specific indemnity provision included in the contract between the NOAB and ETI; therefore, the NOAB’s only redress was in tort, and the cause of action was prescribed pursuant to LSA-C.C. art. 3492.[2] In finding no contract of indemnity, the court noted:
“A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an' indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms.” Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986); Polozola v. Garlock, 343 So.2d 1000 (La.1977); Berry v. Orleans Parish School Bd., 2001-3283 (La.5/21/02), 830 So.2d 283.
The court of appeal held, as well, that the NOAB had ninety (90) days from service of the main demand to seek indemnification, and failed to do so; thus, NOAB’s third party demand was prescribed. NOAB applied for a writ of certiorari, alleging error in the lower courts’ application of LSA-C.C.P. art. 1067 to an | incidental demand for indemnification, and this Court granted NOAB’s writ of certiorari. Reggio v. ETI, 07-1433 (La.10/12/07), 966 So.2d 536.

*954
DISCUSSION

The standard controlling review of a peremptory exception of prescription requires that this Court strictly construe the statute against prescription, and in favor of the claim that is said to be extinguished. Louisiana Health Service and Indemnity Company v. Tarver, 93-2449, pp. 11-12 (La.4/11/94), 635 So.2d 1090, 1098; Fontaine v. Roman Catholic Church of Archdiocese of New Orleans, 625 So.2d 548, 551 (La.App. 4th Cir.1993), writ denied, 93-2719 (La.1/28/94), 630 So.2d 787.
When an exception of prescription is filed, ordinarily, the burden of proof is on the party pleading prescription. However, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Alex Spott v. Otis Elevator Company, 601 So.2d 1355 (La.1992); Eastin v. Entergy Corp., 03-1030 (La.2/6/04), 865 So.2d 49.
In the present case, the plaintiffs’ Petition for Damages was filed on March 3, 2003, while NOAB’s Third Party Demand was filed on February 27, 2006, nearly three years after the original Petition was filed. ETI contends that NOAB’s Third Party Demand is prescribed on its face, arguing that the one year prescriptive period, provided for in LSA-C.C. art. 3492, expired on March 3, 2004. Additionally, ETI argues that the Third Party Demand is prescribed on its face, pursuant to LSA-C.C.P. art. 1067.
Since NOAB’s third party demand is seeking indemnification pursuant to the terms of a contract, we must examine the basic law of indemnity to better understand the potential cause of action.
| BIndemnity
NOAB argues first that the contract between the City of New Orleans and ETI includes indemnity language in favor of NOAB, and points to the clause where St. Paul Fire and Marine Insurance Company appears as surety. The record shows that St. Paul Fire and Marine Insurance Company intervened in the contract as Surety for the faithful performance of all work, and to fully secure and protect the City of New Orleans from all losses arising from failure or neglect on the part of ETI.[3]
*955 An action for indemnity is a separate substantive cause of action, arising at a different time, independent of the underlying tort, with its own prescriptive period. This Court defined “indemnity” in Nassif v. Sunrise Homes, Inc.,[4] 98-3193, pp. 2-3 (La.6/29/99), 739 So.2d 183, 185:
| (¡Indemnity ... means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed.... It is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss. [Citations omitted].
At oral argument in this Court, NOAB suggested that the contract between ETI and NOAB clearly sets forth the parties’ intent to provide indemnity for “... all loss or expense of any kinds, including all costs of Court and attorneys'f ees, made necessary or arising from the failure, refusal or neglect of the aforesaid ETI, Contractor, to comply with all of the obligations assumed by it.”
While NOAB makes the argument here, the record shows that NOAB conceded in the lower courts that there was no contractual indemnity. In NOAB’s Memorandum In Support of Motion to Reconsider Judgment, it acknowledged in its conclusion that “no express contract provision exists that specifically provides for indemnity.” After reviewing the four corners of the contract, we conclude, as well, that there is no express language to support contractual indemnity between ETI and NOAB. Thus, there is no express contractual indemnity.

Third Party Demands

A third party demand is an incidental demand allowed by the Louisiana Code of Civil Procedure. “Incidental demands are reconvention, crossclaim, intervention, and the demands against third parties.” LSA-C.C.P. art. 1031(B). LSA-C.C.P. art. 1067 provides that:
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of the main demand or in the case of a third party defendant within ninety days from service of process of the third party demand.
This Court has determined that “Article 1067 was initially added to protect defendants from being lulled into the loss of their right to assert actions and defenses 17through reconvention by plaintiffs’ guile and delay in bringing forward their ultimate and true demands. Act 472 of 1970.” Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268, 1272. In Moore, we determined that the fundamental purpose of prescription statutes is “to afford a defendant security of mind and affairs” if the claim is filed untimely and “to protect him from stale claims and the loss or non-preservation of relevant proof.” Id.
Professor Frank Maraist and Justice Harry T. Lemmon (retired) explained in Chapter 7 of the Louisiana Civil Law Treatise, entitled “Incidental Actions,” 1 La. Civ. L. Treatise, Civil Procedure § 7.2(2008), that:
Article 1067 has utility in avoiding unnecessary lawsuits. When two claims arise out of the same occurrence, one person may decide not to pursue his or *956 her claim as long as the other person also forgoes that claim. However, a claimant who would otherwise forgo his or her claim may not learn until after the claim has prescribed that the other party filed an “eleventh hour” suit. Faced with this prospect, such a claimant would be likely to file a protective suit. Article 1067 eliminates the dilemma that would prompt a protective, and sometimes unnecessary, suit by allowing the forebearing claimant a ninety-day grace period. The period has been described as an exemption period, and not an extension of prescription.
[Footnotes omitted.]
LSA-C.C.P. art. 1067 is an exemption, rather than a prescriptive statute, which exempts the incidental demand from any applicable prescriptive statute whose prescriptive period would accrue during the 90 day period from the date of service of the main demand. Traylor v. Reliance Insurance Co., 98-1379 (La.App. 4 Cir. 7/1/98), 715 So.2d 1253. Article 1067 was promulgated to permit additional opportunities for filing reconventional demands on which prescription would normally have run, but within 90 days of the filing of the main demand. Id. Subsequently, Act 86 of 1974 amended Article 1067 to expand its scope to encompass reconventional demands and “all prescribed incidental or third party demands.” Id.
|sSome appellate courts have held that a defendant’s third party demand, not filed within one year of the allegedly tortious conduct, or within 90 days of plaintiffs amended petition, is prescribed pursuant to LSA-C.C.P. art. 1067. See, Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1 Cir.1992); Keller v. Townsley, 462 So.2d 264, 365 (La.App. 1 Cir.1984); State Fann v. Smith, 448 So.2d 209 (La.App. 1 Cir.1984); Hildebrand v. Schnell, 441 So.2d 395 (La.App. 4th Cir.1983). See also, Lawyer v. Succession of Kountz, 00-1888 (La.App. 4th Cir.1/8/02), 806 So.2d 867, writ denied, 02-253 (La.3/28/02), 812 So.2d 632, where a buyer sued the seller for rescission of the sale after discovering termite damage in the house. Three years later, the Succession filed a third party demand against the termite inspector. In that case, the termite inspector filed an exception of prescription, which the lower courts granted and dismissed the Succession’s incidental demand. The court held that the Succession’s incidental demands against Rid-A-Pest had prescribed since the third party demand was filed almost three years after the original petition was served. It was not served within the 90 day delay period provided by LSA-C.C.P. art. 1067; in fact more than one year had elapsed since the expiration of the 90 day period.
Next, we must determine when the cause of action accrued in order to decide whether NOAB’s claim for indemnification has expired since it was clearly filed three years after the main demand.

Prescription

In Louisiana, there are three elements necessary for a negligence cause of action to accrue: fault, causation, and damages. Austin v. Abney Mills, Inc., 01-1598, n. 7 (La.9/4/02), 824 So.2d 1137, 1150. Before prescription can run, or be suspended, these three elements must exist. Id. To determine whether a claim is prescribed, a court looks to the time when a plaintiff knew or should have known that |ga cause of action arose or existed. However, to decide what substantive law to apply, a court must look to token the cause of action accrued,, i.e. when the injury or insult to the plaintiff first occurred. Cole v. Celotex, 599 So.2d 1058 (La.1992).
In this case, we find that NOAB’s demand sounds in tort; thus, the one-year prescriptive period would apply. It is clear from our review of the original petition and the third party demand that *957 NOAB asserts a negligence (tortious) cause of action, which has a one year prescription period attached. See, LSA-C.C. art. 3492.
Louisiana courts have found that in a claim for indemnification based on a tortious act, prescription begins to run when the indemnity claimant suffers the loss or damage, at the time of the payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereof by the party seeking indemnity, i.e., when the judgment has been cast. Wiggins v. State Through Dept. Of Transportation and Development, 97-0432 (La.App. 1 Cir. 5/15/98), 712 So.2d 1006, 1011, writ not considered, 98-1652 (La.9/25/98), 726 So.2d 6; Carpenter v. Lafayette Woodworks, Inc., 504 So.2d 179 (La.App. 3rd Cir.1987).
In Bergeron v. Amerada Hess Corp., 478 So.2d 1308, 1310 (La.App. 5th Cir.1985), the plaintiffs filed suit to recover damages as a result of the death of Perry Bergeron, who was the passenger in a boat which collided with an oil well. The suit was filed against owner, insurer, and several employees of the oil well within the applicable one year prescriptive period. The owner of the oil well then filed a third-party demand seeking contribution against the operator of the boat. However, the third-party demand was not filed until four months after the principal action would have prescribed. Bergeron, 478 So.2d at 1309.
The third-party defendant, the boat operator, filed a peremptory exception of prescription alleging that pursuant to LSA-C.C.P. art. 1067, the third party plaintiff, Imthe owner of the oil well, only had ninety days from service of the main demand to file the claim. The trial court upheld the peremptory exception of prescription. However, the appellate court found that since the action was for contribution and/or indemnity, prescription could not begin to run until defendant was cast in judgment. Therefore, the time periods set forth in LSA-C.C.P. art. 1067 were not applicable. Bergeron, 478 So.2d at 1309.
The court recognized that LSA-C.C.P. art. 1067 is an exemption rather than a prescriptive statute. Thus, if the action had not or could not have prescribed because the cause of action had not yet accrued, the time limitations of article 1067 would not apply. Bergeron, 478 So.2d at 1309-1310. The court noted that in a claim for indemnity or contribution, prescription does not begin to run until the right vests. Bergeron, 478 So.2d at 1310.
In Wiggins, the plaintiff filed suit against the Department of Transportation and Development (DOTD), on July 30, 1994, seeking damages on behalf of a minor pedestrian struck by a truck driver. DOTD filed its reconventional demand, on December 22, 1995, seeking indemnity from the minor’s mother for her negligence in failing to properly supervise her child, and in allowing him to play near the highway. DOTD’s claim was filed more than ninety days after service of process of the original petition. The court held that based on Bergeron, the limitations set forth in Article 1067 were not applicable, as DOTD’s indemnity claim had not accrued. The court concluded that prescription did not begin to run on DOTD’s claim until the cause of action matured, which would have been at the time of judgment and payment by DOTD in excess of its virile portion of the damages.
In Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, this Court held that “[pjrescription cannot run against a cause of action that has not accrued or while |nthat cause of action cannot be exercised.” (citing Wilkinson v. Wilkinson, 323 So.2d 120, 125 (La.1975)). Because prescription does not commence on a claim for indemnity until a party has *958 sustained a loss, either through payment, settlement, or an enforceable judgment, we hold that the indemnity claim is not time barred. See Wiggins, 712 So.2d at 1011, (claim for indemnity not governed by or time-barred by the provisions of LSA-C.C.P. art. 1067).
We find, as well, that while NOAB may have a potential claim for indemnity, we conclude that indemnity is not available at this time because NOAB has not suffered any loss or damages, i.e., the cause of action has not yet accrued. Thus, there is no need for contribution or indemnification. In sum, we find that the prescriptive period on a claim for indemnity does not begin to run until NOAB is cast in judgment, regardless of the applicable theory of indemnity. Thus, we expressly overrule the holding of Lawyer v. Succession of Kountz, supra.
An action for indemnity is a separate substantive cause of action, independent of the underlying tort. The action for indemnity does not accrue until the City of New Orleans is responsible for a judgment, or actually discharges a liability for which NOAB is responsible. Thus, NOAB’s action against ETI is neither premature nor prescribed. See, Article 1805.
An action is premature when the “right of action ” is the right to claim contribution. This right matures by operation of law, when parties are cast as solidai’y obli-gors. Therefore, when the plaintiffs named both E.T.I. and NOAB, as defendants, a “right of action ” in subrogation was created by operation of law.
This Court has spoken on this issue in at least two cases.
A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking 112to enforce contribution admits or denies liability on the obligation alleged by plaintiff.
Perkins v. Scaffolding Rental and Erection Service, Inc., et al., 568 So.2d 549 at 551, (La.1990).
This Court further explained that “[t]he source of the right to claim contribution is subrogation to the plaintiffs rights against the remaining tortfeasors. Contribution rights are enforced/created by joining potential solidary obligors as third-party defendants.” Farbe v. Casualty Reciprocal Exchange, 2000-0076, p. 4 (La.7/6/00), 765 So.2d 994, 996.
In Glass v. Alton Ochsner Medical Foundation, et al., 02-0412 (La.App. 4th Cir.11/6/02), 832 So.2d 403 at 409, the Fourth Circuit, when examining the right to bring two suits for indemnity arising from the same facts, stated that:
The Supreme Court .... did not create requirements for tortfeasors to fulfill in order to file their Third Party Demand. The nonexistence of this requirement allows tortfeasors to proceed against [defendants] where the original plaintiffs are precluded.
In Mercantile, III, Inc., et al. v. Glaser, M.D., 01-2101 (La.App. 4th Cir.1/9/02), 806 So.2d 906, 908, the Fourth Circuit explained that:
The predecessor to article 1805, article 2103 of the civil code of 1870, was amended in 1960 to overrule legislatively Kahn v. Urania Lumber Co., 103 So.2d 476, 478 (La.App. 2d Cir.1958), which stood for the proposition that “there is no right of contribution between joint tort-feasors unless and until they have been condemned in a judgment in solido, and then only in favor of the joint tort-feasors who has paid the damages awarded.” The article thus changed the time when a demand for contribution could be asserted and allowed a defen *959 dant to seek contribution against a co-obligor who had not already been cast in judgment.
For these reasons, the lower courts erred in granting ETI’s Exception of Prescription and dismissing NOAB’s third party demand. The lower courts’ rulings are hereby reversed, and the case remanded for further proceedings.
J^REVERSED and REMANDED.
KIMBALL and KNOLL, JJ., concur.
VICTORY, J., concurs in part and dissents in part and assigns reasons.
TRAYLOR, J., concurs in part and dissents in part for reasons assigned by VICTORY, J.
WEIMER, J., concurs and assigns reasons.

. LSA-C.C. art. 2762, entitled "Liability of contractor for damages due to badness of workmanship,” provides that:
If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.

. LSA-C.C. art. 3492 provides, in pertinent part, that "[d lelictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damages is sustained.”

. The contract specifically provides, in pertinent part, that:
The said ETI ... [is] hereby bound to perform this contract ... strictly in accordance with said plans and specifications, to observe and comply with all conditions and stipulations therein contained....
And the City of New Orleans binds and obligates itself to pay to, on the proper completion of its contract, the amount as set forth in its bid.
And now to these presents personally came and intervened St. Paul Fire & Marine Insurance Company, as Surety.
Who ... hereby bind itself as surety for the faithful performance of all work called for in the said contract by the said contractor ... and does further bind and obligate itself as surety for the payment ... of all payments to be made by the said contractor under the contract, ... each of the said bonds given herein to be considered separate and distinct, and no payment made by the surety under either shall in any way reduce the obligations of the surety under the other.
NOW THE CONDITION, of this obligation is such that if the said ETI ... shall ... perform all ... obligations assumed by it in the aforesaid contract, ... and shall fully secure and protect the said City of New Orleans ... from all loss or expense of any kind, including premises, and from all loss or expense of any kind, including all costs of Court and attorneys' fees, made necessary or arising from the failure, refusal or neglect of the aforesaid ETI ... to comply with all of the obligations assumed by it; ans likewise to promptly deliver all the work called for by said contract to the City of New Orleans, free from any and all such claims, liens and expenses, then this *955 said bond shall become null and void, otherwise to remain in full force and effect.

. In Nassif, the Court made clear that an action for indemnity is a separate substantive cause of action, independent of the underlying wrong. Id. at 186.