ROSEMARY LEDET, Judge.
11 This is a commandeering case arising out of Hurricane Katrina. On July 10, 2007, Alfreda Melerine Pizani and Avis Melerine Juan (the “Plaintiffs”), commenced this suit against St. Bernard Parish (“St. Bernard”) and the Lake Borgne Basin Levee District (“LBBLD”) seeking just compensation under the Louisiana Constitution.[1] Plaintiffs alleged that St. Bernard and LBBLD commandeered their property, removing 97,931 cubic yards of soil between October 24, 2005 and July 13, 2006, without their permission.
The underlying factual basis of Plaintiffs’ claim is set forth in detail in Pizani v. *548 St. Bernard Parish, 2013 WL 1403817 (E.D.La.4/5/13),[2] as follows:
The basis for this suit is the alleged damage to private properties caused by the actions of local and federal government entities while making emergency repairs to a levee damaged by Hurricane Katrina. Plaintiffs assert that this alleged damage occurred as a result of the commandeering of their property by defendants St. Bernard and LBBD.
On September 1, 2005, in response to Hurricane Katrina, St. Bernard Parish issued an Executive Order concerning emergency powers under the Louisiana Homeland Security and Emergency ^Assistance and Disaster Act, La.Rev.Stat. 29:271. Pursuant to these powers, St. Bernard signed an Order “Commandeering Property and Granting Irrevocable Right of Entry for Borrow, Access, and Construction (Repair and Rehabilitation) of the Lake Pontchartrain Louisiana and Vicinity Hurricane Protection Levee, St. Bernard Parish (“Commandeering Order”). This order allowed the use of certain private property to obtain borrow materials, gain access, and construct (repair and rehabilitate) the levee. The private property subject to the Commandeering Order lies within and is a part of the properties belonging to the plaintiffs. The Commandeering Order also granted an “irrevocable right of entry to these lands to the [LBBLD] for its use in obtaining borrow, access and construction of said levee repairs and rehabilitation. On September 30, 2005, LBBLD issued an “Authorization for Entry for Borrow, Access and Construction (Repair and Rehabilitation),” stating that it had acquired real property interests in the plaintiffs’ properties pursuant to the Commandeering Order and authorizing “the Department of the Army, its agents, employees, and contractors to enter upon these lands to obtain borrow, access, and construct ... said levee as set forth in the plans and specifications ... ”. On October 2, 2005, St. Bernard and the LBBLD entered into a “Cooperation Agreement” with the United States of America, represented by the U.S. Army Corps of Engineers (“USACE”). On October 17, 2005, these parties entered into an “Amended Cooperation Agreement.” Both of these agreements designate St. Bernard and LBBLD as “Public Sponsors” obligated to provide USACE “right of entry to all lands, easements, and rights-of-way, including suitable borrow and dredged or evacuated material disposal areas” as may be determined necessary by USACE. Olivier, The initial Cooperation Agreement stated that the Public Sponsors (St. Bernard and LBBD) would contribute “toward the construction of the Rehabilitation Effort in an amount equal to 0.0% of Rehabilitation Effort costs.” The Amended Cooperation Agreement provided that USACE would indemnify and pay just compensation to the owners of a compensable interest in the commandeered property.
Id. (citations to the record and to Olivier Plantation, LLC v. St. Bernard Parish, 744 F.Supp.2d 575 (E.D.La.2010), omitted).
LBBLD answered Plaintiffs’ petition. It also filed a motion for leave to file an amended answer and a third party demand *549 against the United States Army Corps of Engineers (“USACE”). At the August 15, 2008 hearing on LBBLD’s motion, Plaintiffs moved to dismiss LBBLD with prejudice, reserving their rights Ragainst St. Bernard. On August 21, 2008, the trial court dismissed LBBLD with prejudice.
On October 31, 2008, St. Bernard filed a motion for leave to file an amended answer and a third party demand against LBBLD and USACE. In its third party demand, St. Bernard averred that “LBBLD was an original defendant in this matter but was dismissed by the Plaintiffs with no advance knowledge by St. Bernard Parish.”[3] It further averred that LBBLD and USACE, as third party defendants, owed contribution to St. Bernard, as a third party plaintiff, for “any and all sums that Plaintiffs may be awarded in this action.”[4] The basis averred for the contribution claim against LBBLD was that it “agreed to compensate property owners [Plaintiffs] for any actual damage as a result of this hurricane protection excavation work, pursuant to a Right of Entry document.” Both LBBLD and Plaintiffs opposed St. Bernard’s motion. Although St. Bernard’s motion for leave was filed in October 2008, it was not ruled upon until several years later.
On June 19, 2012, the trial court granted St. Bernard’s motion. Seeking review of that ruling, LBBLD filed a writ application with this court.[5] Finding the trial court did not err in granting St. Bernard’s motion, this court denied LBBLD’s writ. Pizani v. St. Bernard Parish, 12-1084 (La.App. 4 Cir. 9/24/12) (unpub.).[6] LBBLD then filed a writ application with the Louisiana Supreme Court. While LBBLD’s writ was pending before the Supreme Court, St. Bernard served USACE with the third party demand. In response, USACE removed the case to federal district court. On April 5, 2013, the federal district court dismissed St. Bernard’s third party demand against USACE as premature and remanded the remainder of the case to state court. Pizani v. St. Bernard Parish, 2013 WL 1403317 (E.D.La.2013).
On May 24, 2013, the Louisiana Supreme Court granted LBBLD’s writ appli *550 cation and remanded to this court “for briefing, argument and opinion.” Pizani v. St. Bernard Parish, 12-2208 (La.5/24/13) (unpub.). On remand, this court entertained oral and written argument from LBBLD, St. Bernard, and Plaintiffs. For the reasons that follow, this court finds the trial court did not abuse its discretion in granting St. Bernard’s motion for leave to add LBBLD as a third party defendant. Accordingly, LBBLD’s writ is granted, but its request for relief is denied.

DISCUSSION

The governing rules regulating the filing of a third party demand include La. C.C.P. articles 1033 and 1111. Article 1111 provides that a “defendant in a principal action by petition may bring in any person, including a codefendant, who is his war-rantor, or who is or may be liable to him for all or part of the principal demand.” La. C.C.P. art. 1111. Article 1033 provides that:
| sAn incidental demand may be filed without leave of court at any time up to and including the time the answer to the principal demand is filed.
An incidental demand may be filed thereafter, with leave of court, if it will not retard the progress of the principal action, or if permitted by Articles 1066 or 1092.
La. C.C.P. art. 1033.
Given that St. Bernard filed its third party demand over a year after this suit was commenced, St. Bernard was required to obtain leave of court to file its third party demand, which the trial court granted. “A trial court has broad discretion in deciding whether or not to allow an incidental demand to be filed after the answer to the principal demand has been filed.” Marshall v. Air Liquide-Big Three, Inc., 11-1239, p. 3 (La.App. 4 Cir. 4/11/12), 89 So.3d 427, 429 (citing Blalock v. Lord, 05-0939 (La.App. 3 Cir. 2/1/06), 927 So.2d 1142); see also Volume Shoe Corp. v. Armato, 341 So.2d 611 (La.App. 2d Cir.1977) (stating that a trial court has broad discretion in deciding whether to allow an intervention after the answer to the principal demand has been filed). The issue presented is thus whether the trial court abused its broad discretion in granting St. Bernard’s motion for leave to file a third party claim.
LBBLD contends that the trial court erred in granting St. Bernard’s motion for the following three reasons: (i) under Louisiana’s comparative fault law, there is no solidarity in non-intentional tort cases and thus no right of contribution against a released joint tortfeasor, see La. C.C. art. 2324(B);[7] (ii) even assuming a ^solidary obligation exists, the dismissal of a defendant with prejudice eliminates any right to contribution against that defendant, see La. C.C. art. 1805 and comment (c) to that article;[8] and (iii) a claim for contractual indemnification is premature when asserted before a judgment has been entered *551 against the third party plaintiff.[9]
St. Bernard counters that a trial court has broad discretion to grant leave to file a third party demand and that, under the circumstances of the instant case, the trial court did not abuse its discretion in granting its motion. St. Bernard further counters that LBBLD’s reliance on negligence cases is misplaced for two reasons. First, LBBLD and St. Bernard are alleged to have participated in intentional conduct— intentionally commandeering Plaintiffs’ property — and thus are solidarily liable. See La. C.C. art. 2324(A).[10] Second, St. Bernard has alleged a contractual claim against LBBLD. According to St. Bernard, both LBBLD and USACE are contractually obligated to indemnify Plaintiffs. St. Bernard contends that it is a third party beneficiary of those contracts. See La. C.C. arts. 1978 to 1982.[11] St. Bernard further contends that Plaintiffs’ dismissal with prejudice of |7their claims against LBBLD cannot preclude St. Bernard’s contractual indemnity claim against LBBLD. St. Bernard still further contends that its contractual indemnity claim against LBBLD is not premature.
LBBLD’s argument can be divided into two parts: St. Bernard’s third party demand for tort contribution and its third party demand for contractual indemnity. For purposes of discussion, we divide our analysis into those two parts.

Tort Contribution Claim

LBBLD contends that St. Bernard may only be liable for its own degree of fault and that it has no right of tort contribution against LBBLD. In support, LBBLD quotes the following statement from Dumas v. State ex rel. Dep’t of Culture, Recreation & Tourism, 02-0563, p. 14 (La.10/15/02), 828 So.2d 530, 538: “the right of contribution among solidary tort-feasors ... disappeared [with the adoption of La. C.C. art. 2324(B)] since it is no longer necessary in light of the abolishment of solidarity.” Id. LBBLD further contends that to the extent the obligation St. Bernard alleges is solidary, LBBLD’s dismissal with prejudice by Plaintiffs eliminated any right to contribution. See La. C.C. art. 1805, cmt. (c). As a result, LBBLD maintains that it is no longer Plaintiffs’ obligor and that no other party can stand in Plaintiffs’ shoes or have a *552 cause of action against LBBLD based on the allegations of Plaintiffs’ petition.
LBBLD further maintains that after a co-defendant’s dismissal with prejudice, a remaining defendant’s remedy is limited to an empty-chair defense — “[a] trial tactic in a multiparty case whereby one defendant attempts to put all the fault on a defendant who ... settled before trial or on a person who was [not] ... |snamed as a party.” Bryan A. Garner, Black’s Law Dictionary, 567 (8th ed.2004). In support of this contention, LBBLD cites Harvey v. Travelers Ins. Co., 163 So.2d 915, 921-22 (La.App. 3 Cir.1964), which held that “where the claimant in a tort action settles with and releases one of two joint tort-feasors, reserving all of his rights against the other, the remaining tort-feasor is thereby deprived of his right to enforce contribution against the one who has been released.” See also Wall v. American Employers Ins. Co., 386 So.2d 79, 85 (La.1980). LBBLD still further maintains that a remaining defendant has no right to bring a third party demand for tort contribution against a previous co-defendant who has been dismissed with prejudice. LBBLD cites DiBenedetto v. Noble Drilling Co., 09-0073, 09-464, 09-1025 (La.App. 4 Cir. 10/21/09), 23 So.3d 400, as illustrative.
In DiBenedetto, supra, the plaintiff-tort victim dismissed two of the named defendants with prejudice. A remaining defendant filed a third party demand against the two dismissed defendants, which the plaintiff opposed,[12] At the plaintiffs request, the trial court issued an order prohibiting the remaining defendant from filing a third party demand against the dismissed defendants. On appeal, the remaining defendant contended that pursuant to La. C.C.P. art. 1033 it had the “unfettered right” to file a third party demand against the dismissed defendants. Rejecting that contention, this court held that “Article 1033 addresses the issue of when leave of court is required to file an incidental demand, but the article does not authorize the filing of a third party demand against a previously dismissed defendant.” DiBenedetto, 09-0073 at p. 4, 23 So.3d at 404.
| aBased on the jurisprudence, we conclude that Article 1033 is a procedural rule that confers no substantive right on a defendant to join a previously dismissed defendant. We further conclude that to the extent LBBLD’s indemnity claim is based on negligence, it is precluded. We still further conclude that the Plaintiffs’ dismissal of their claims against LBBLD does not preclude St. Bernard from pursuing its alleged contractual claim for indemnity against LBBLD. See Perkins v. Scaffolding Rental and Erection Service, Inc., 568 So.2d 549, 552 (La.1990) (noting that under La. C.C.P. art. 1673, a plaintiff is not precluded from filing a suit against a previously dismissed party on a different cause of action); Reggio v. E.T.I., 07-1433, p. 11 (La.12/12/08), 15 So.3d 951, 958 (noting “[t]he action for indemnity is a separate substantive cause of action, independent of the underlying tort”).

Contractual Indemnity Claim

LBBLD contends that St. Bernard’s contractual indemnity claim is premature because no judgment has been entered against St. Bernard in this case. LBBLD’s prematurity argument is not without jurisprudential support. In Suire v. Lafayette City-Parish Consolidated *553 Government, 04-1459, 04-1460, 04-1466 (La.4/12/05), 907 So.2d 37, 51, the Louisiana Supreme Court found that: “[a]n in-demnitor is not liable under an indemnity agreement until the indemnitee ‘actually makes payment or sustains loss.’ ” Id. Nonetheless, as Justice Weimer aptly noted in his concurrence in Reggio, supra, “there is a distinction between the right to ‘claim’ indemnity and the right to ‘collect’ indemnity.” Reggio, 07-1433 at p. 13, 15 So.3d at 960 (Weimer, J., concurring).
This case squarely presents the unresolved issue raised by Justice Victory in his concurrence in Moreno v. Entergy Corp., 10-2268, p. 5 (La.2/18/11), 64 So.3d 761, 765-66; namely: “whether a third party indemnity claim is premature when the defendant [third party plaintiff] has not yet been cast in judgment.” Id. Expressing his position that such a claim is not premature, Justice Victory reasoned as follows:
The court of appeal found that such a claim is premature. However, a clear reading of La. C.C.P. arts. 1111-1116 demands that the third party demand is not premature. For example, La. C.C.P. art. 1111 states that a “defendant in a principal action by petition may bring in any person, including a codefen-dant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand.” La. C.C.P. arts. 1112 and 1116 provides the same right to defendants in reconvention and third party defendants. Most significantly, La. C.C.P. art. 1113 provides harsh consequences for a defendant who fails to bring in such a third party defendant:
A defendant who does not bring in as a third party defendant a person who is liable to him for all or part of the principal demand does not on that account lose his right or cause of action against such person, unless the latter proves that he had means of defeating the action which were not used, because the defendant either failed to bring him in as a third party defendant, or neglected to appraise him that the suit had been brought. Similarly, La. C.C.P. art. 1091 allows
“a third party having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties ...” An important reason for allowing a third party claim for indemnity to be filed before the defendant is cast in judgment is because if the third party is not permitted to participate in the trial on the principal demand, it may be forced to indemnify the main defendant for a large judgment it could have otherwise averted.
Moreno, 10-2268 at p. 5 (La.2/18/11), 64 So.3d at 765-66 (Victory, J., concurring).
Justice Victory’s position that a third party indemnity claim is not premature is consistent with the legislative history and purpose of La. C.C.P. art 1111. Summarizing the legislative history and purpose of Article 1111, a commentator states:
| ^Louisiana adopted the procedural mechanism of the third-party action in 1954, with the adoption of the Third-Party Practice Act, formerly La.Rev. Stat. Ann. §§ 13:3381 et seq., the forerunner of La.Code Civ. Proc. Ann. arts. 1111 to 1116. See Automotive Finance Co. v. Daigle, 80 So.2d 579 (La.Ct.App. 1st Cir.1955) [ (citing Jeub v. B/G Foods, Inc., 2 F.R.D. 238 (D.Minn.1942)) ].
Third-party practice was adopted in Louisiana with these purposes in mind: to avoid multiple lawsuits; to facilitate and expedite the trial of litigation; and, wherever possible, consistent with orderly procedure and due regard for the rights of all litigants, to dispose of all *554 phases of an action in a single proceeding. Breaux v. Texas & P. Ry. Co., 147 So.2d 693 (La.Ct.App. 1st Cir.1962). A third party demand is a device principally used for making claims of contribution or indemnity in the event the defendant loses on the principal demand; Union Service & Maintenance Co., Inc. v. Powell, 393 So.2d 94 (La.1980).
Hon. Max Tobias, Jr., John M. Landis, & Gerald E. Meunier, LA. PRAC. CIV. PRETRIAL § 10:69 (2012-13 ed.); see also Burns v. McDermott, Inc., 95-0195 (La.App. 1 Cir. 11/9/95), 665 So.2d 76, 78-79 (noting that under La. C.C.P. art. 1111 “[t]he contingent nature of some third party demands is specifically recognized and authorized.”).
As indicated, Article 1111 tracks the language of Federal Rule 14 verbatim. Summarizing the jurisprudence construing the applicability of Federal Rule 14 to third party indemnity claims, a noted commentator states:
Rule 14 allows defendant to implead one “who ... may be liable” to the third-party plaintiff for all or part of the plaintiffs claim against it. The words “may be liable” mean that defendant is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of plaintiffs action and will accrue when defendant’s liability is determined in the main action or plaintiffs claim is satisfied. In this context, resort to impleader has the effect of accelerating the determination of the third-party defendant’s liability.
The contingent claim normally stems from the third-party plaintiffs right of indemnity, subrogation, contribution, or warranty. It should be remembered, however, that there must be a substantive right to relief that will accrue to the third-party plaintiff under the | ^applicable law. When there is no possibility of a right coming into existence, impleader is improper.
6 Wright & Miller, FED. PRAC. & PROC. CIV. § 1451 (3d ed.)(“Wright & Miller”).
The application'of this feature of Rule 14 is illustrated by Jeub v. B/G Foods, Inc., 2 F.R.D. 238 (D.Minn.1942). Wright & Miller, supra. In Jeub, the plaintiffs sued B/G Foods, Inc. (“B/G”) seeking to recover for injuries they allegedly sustained as a result of eating contaminated ham at one of its restaurants. B/G responded by filing a third party demand against its supplier, Swift and Company (“Swift”), alleging that it purchased the contaminated ham from Swift and asserting contribution and indemnity claims. Opposing the third-party demand, Swift contended that it was premature. Swift argued that under the applicable state law (Minnesota law) no claim could be asserted until B/G had satisfied the plaintiffs’ claims. Rejecting this argument, the federal court reasoned:
The invoking of the third-party procedural practice must not do violence to the substantive rights of the parties. However, an acceleration or expedition of the presentation of such rights does not conflict with any Minnesota law. Rule 14 of the Federal Rules of Civil Procedure permits the impleader of a party “who is or may be liable.” The fact that an independent action for money recovery could not be brought at this time does not militate against B/G Foods’ right to invoke a procedure which will determine rights of the parties concurrently with that of the basic proceeding, and if and when any loss has been sustained as to which Swift and Company is liable over, the laws of this state in regard thereto may be made effective.
Jeub, 2 F.R.D. at 240.
Continuing, the federal court in Jeub, supra, explained the judicial economy of *555 allowing B/G Foods’ third party demand for indemnity as follows:
The apparent purpose of Rule 14 is to provide suitable machinery whereby the rights of all parties may be determined in one proceeding. Manifestly, if Swift and Company is liable over to B/G Foods, Inc., for any or all damages sustained by reason of the tortious |isact alleged, no cogent reason is suggested why the original defendant should not avail itself of this rule. Otherwise, B/G Foods, Inc., would be required to await the outcome of the present suit, and then if plaintiffs recover, to institute an independent action for contribution or indemnity. The rule under consideration was promulgated to avoid this very circuity of proceeding.
Jeub, 2 F.R.D. at 241. Allowing a third party demand in this context promotes judicial economy by avoiding a “circuity of proceeding,” i.e., a multiplicity of suits. For these reasons, we find Justice Victory’s position that a third party indemnity claim is not premature persuasive.

CONCLUSION

Based On the above analysis, we find the trial court did not abuse its broad discretion in granting St. Bernard’s motion for leave to file a third party demand against LBBLD. Given the length of time this action has been pending (since July 2007), it would be judicially inefficient to require St. Bernard to bring a separate suit following a final judgment in this case to assert its indemnity claim against LBBLD.[13] For these reasons, LBBLD’s writ is granted, but its request for relief is denied.
WRIT GRANTED; RELIEF DENIED.
LANDRIEU, J., concurs with reasons.

. Under the Louisiana Constitution, property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation to the owner. La. Const. art. I, § 4.

. As the federal district court in Pizani v. St. Bernard Parish, 2013 WL 1403317 (E.D.La.2013), noted, the factual background and procedural postures in this case are nearly identical to Olivier Plantation, LLC v. St. Bernard Palish, 744 F.Supp.2d [575 (E.D.La.2010)]."

. LBBLD, on the other hand, maintains that it served all parties — including St. Bernard— with a copy of the proposed written judgment before it was signed and that there were no objections.

. Although St. Bernard labels its third party demand as a contribution claim against LBBLD and USACE, its claim also includes a demand for contractual indemnity. Explaining the difference between these concepts, a commentator notes:
The tortfeasor who pays tort damages may shift all or part of his burden to a third person, through the concepts of indemnity or contribution. Indemnity, which shifts all the burden to the third person, may arise out of contract or may be imposed by operation of tort law. Contribution, which in Louisiana is a form of subrogation, permits one who has paid more than his share of a solidary (joint and several) tort obligation to recoup from the other obligors their share of what he has paid.
Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 12-8 (1996).

. On July 6, 2012, the trial court granted LBBLD’s request for a stay pending this court’s action on its writ.

. Plaintiffs also filed a writ application seeking review of the trial court’s decision insofar as it allowed the third party demand against not only LBBLD, but also USACE. This court denied Plaintiffs’ writ. Pizani v. St. Bernard Parish, 12-1057 (La.App. 4 Cir. 7/17/12) (un-pub.). Plaintiffs then took a writ to the Louisiana Supreme Court. Plaintiffs, however, dismissed their writ following the federal district court’s ruling in Pizani v. St. Bernard Parish, 2013 WL 1403317 (E.D.La.2013), dismissing St. Bernard's third party demand against USACE as premature. The instant writ pertains solely to St. Bernard's third party demand against LBBLD.

. La. C.C. art. 2324(B) provides:
If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tort-feasor shall not be liable for more than his degree of fault and shall not be solidarity liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable.

. La. C.C. art. 1805 provides:
A party sued on an obligation that would be solidary if it exists may seek to enforce *551 contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.
La. C.C. art. 1805. Comment (c) to Article 1805 provides that "[a]n obligor who has been released by his obligee is no longer an obligor and therefore cannot be made a third party.”

.See Constans v. Choctaw Transport, Inc., 97-0863, p. 6 (La.App. 4 Cir. 12/23/97), 712 So.2d 885, 890; Thomas v. W & W Clarklift, Inc., 375 So.2d 375, 378 (La.1979); Suire v. Lafayette City-Parish Consolidated Government, 04-1459, 04-1460, 04-1466 (La.4/12/05), 907 So.2d 37, 51.

. La. C.C. art. 2324(A) provides: "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.”

. At oral argument before this court, the issue was raised whether St. Bernard’s contractual indemnity claim based on its third party beneficiary status — -its stipulation pour autrui claim — was properly before us. We find it unnecessary to reach that issue. Nor do we find it necessary to reach the issue of whether St. Bernard has a valid contractual indemnity claim. For purposes of deciding the procedural issue presented we assume that St. Bernard has alleged an indemnity claim that can be classified as sounding in contract.

. In DiBenedetto, the plaintiff opposed the motion for leave to amend on the basis that joining the dismissed defendants — two South African companies — would result in the case being removed to federal court. Although the same arguably was true in this case regarding the joinder of USACE, this writ pertains only to LBBLD.

. We note that St. Bernard's claim for indemnity against USACE must be separately pursued in the federal court of claims following a final state court judgment in this case. Pizani v. St. Bernard Parish, 2013 WL 1403317 (E.D.La.2013).