455 So.2d 1260 (1984)
AMOCO PRODUCTION COMPANY
v.
COLUMBIA GAS TRANSMISSION CORPORATION.
Appeal by TRENDWOOD FOUNDATION, INC., et al.
No. CA-1759.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1984.
Writs Denied November 9, 1984.
*1262 Gene W. Lafitte, George J. Domas, Appeal Counsel, Deborah Bahn Price, Joe B. Norman, Liskow & Lewis, New Orleans, Lawrence P. Simon, Jr., Liskow & Lewis, Lafayette, for Amoco Production Co.; Robert H. Frick, Chicago, Ill., Robert C. Smith, Frederick T. Kolb, Jackson M. Cooley, New Orleans, of counsel.
Frederick W. Ellis, A Law Corporation, New Roads and W.T. Tete, Mars, Medo & Tete, New Orleans, for Trendwood Foundation, Inc.
Frank J. Peragine, Thomas R. Blum, James A. Burton, Thomas J. Fischer, Simon, Peragine, Smith & Redfearn, New Orleans and Giles D.H. Snyder, F. Samuel Byrer, Charleston, W.Va., for Columbia Gas Transmission Corp.
Before GULOTTA, LOBRANO and ARMSTRONG, JJ.
LOBRANO, Judge.
This matter arises out of a dismissal by the trial court on an exception of no right of action of a petition for intervention. From said dismissal intervenors have perfected this devolutive appeal. Several issues have been raised for our determination. They can be summarized as follows:
1) Was the trial court in error in dismissing appellant's intervention?
2) Did the trial court err in limiting certain discovery sought by intervenors?
3) Does this court have jurisdiction to hear this appeal?
STATEMENT OF FACTS
Amoco Production Company (Amoco) brought this action seeking declaratory relief against Columbia Gas Transmission Corporation (Columbia) concerning the performance of two natural gas contracts. The contracts at issue cover gas produced offshore (the Vermillion Contract) and gas produced inshore from the Morganza, Schwab and Ravenswood Areas of Pointe Coupee Parish (the Morganza Contract). Specifically, Amoco seeks a judgment declaring that the contracts are valid and enforceable, that Columbia's contractual obligations are neither excused nor suspended by force majeure or for any other reason, and that Columbia is without right to unilaterally amend or modify the contracts. Amoco additionally seeks an order requiring Columbia to specifically perform its contractual obligations, including the obligation to take and pay for the quantities of gas specified in the minimum take requirements of the contracts, the obligation to make the required payments under the take-or-pay provisions of the contracts, and the obligation to pay for gas taken in accordance with the pricing provisions of the contracts.
Before Columbia answered the suit, a Petition of Intervention was filed on behalf of the Trendwood Foundation, Inc., Silver Mount Corporation, the Trust for John Forest, Ray John Forrest, and Beverly Rachel Janice Forrest (the Trendwood Intervenors). In their original Petition for Intervention, the Trendwood Intervenors allege that they are lessors and/or royalty owners under certain mineral leases with Amoco which cover gas produced and sold to Columbia pursuant to the Morganza Contract. They assert that these mineral leases entitle them to an accounting for and payment of a portion of any monetary or non-monetary benefit derived by Amoco under the Morganza Contract, by settlement or otherwise, as either additional royalty or damages.
Thereafter, Amoco filed exceptions of no right of action and vagueness. Trendwood then filed an amended and second amended *1263 petition of intervention wherein they allege, in addition to the facts of their first petition, that they are third party beneficiaries of the Morganza Contract and further that Amoco and Columbia engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce." Both Amoco and Columbia continued to urge the exceptions of no right of action, and also asserted that the amending petitions failed to state a justiciable case or controversy sufficient to allow intervention.
Prior to a hearing on the exception Trendwood sought various discovery motions including production of the Morganza contract. In response thereto, and at the urging of Amoco and Columbia, the trial court issued a protective order with respect to the document request. In addition certain depositions of Amoco executives scheduled by Trendwood were continued indefinitely by the trial court.
THE INTERVENTION ISSUE
We feel the issue of whether Trendwood has a right to intervene in these proceedings is the major issue in this case, and therefore will discuss same initially. In doing so we deem it important to emphasize that this matter is before us on the procedural issue of "no right of action" and therefore we will refrain from commenting on the merits of the intervenors' various claims.
The peremptory exception of "... no right of action, or no interest in the plaintiff to institute suit" raises the question of whether the plaintiff has a legal interest in the subject matter of the litigation, assuming that a valid cause of action is pleaded by the petition. LeSage v. Union Producing Co., 249 La. 42, 184 So.2d 727. It is designed to question the right or interest of a plaintiff to institute litigation, and the introduction of evidence in support thereof is permissible. La.C.C.P. Art. 931; HMC Management Corporation v. New Orleans Basketball Club, 375 So.2d 700 (La.App. 4th Cir.1979). In cases of intervention, however, these principles must be read in conjunction with the statutory provisions which permit a party to intervene.
Louisiana Code of Civil Procedure Article 1091 provides:
"A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant."
Prior to the adoption of the above article, Article 389 of the Code of Practice of 1870 defined intervention as "a demand by which a third person requires to be permitted to become a party in a suit between other persons; by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff, or where his interest requires it, by opposing both." Article 390 of the Code of Practice stated further: "In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit, or an interest opposed to both."
The official revision comments to Article 1091 makes two observations concerning the prior law of intervention. First the terminology in the prior law was general and indefinite, and second, the term "interest" as used in the Code of Practice goes beyond "the real and actual interest" required under Article 15 to enable a party to institute an action. The redacters then compare Article 1091 with the Italian Civil Code, and interject the idea that a workable formula for intervention should be, "a third person having a justiciable right related to or connected with the object of the principal suit may enforce that right through intervention." See, Comments to La.C. C.P. Article 1091. Therein lies the heart of the dispute between the parties to this *1264 litigation. The redacters' interjection of the term "justiciable right" without defining same is the source of argument on both sides. Does the term "justiciable right" mean any interest, whether indirect, conditional, large or small, or does it have a more restrictive meaning so as to require the same interest as is necessary to enable a party to institute an action on his own? Furthermore, what connexity is required between that "justiciable right" and the facts, circumstances and objects of the main demand?
The issue before this Court in Gallin v. Travelers Insurance Company, 323 So.2d 908 (La.App. 4th Cir.1975) was whether La.C.C.P. Article 1091 would be given a broad or restrictive interpretation. After noting that the strict interpretation in a prior case[1] was severely criticized by the Third Circuit in Bellow v. New York Fire and Marine Underwriters, 215 So.2d 350 (La.App. 3rd Cir.1968), and further noting the change in Article 1091 from the former Code of Practice Articles, we held that the broader interpretation was correct. Our brothers of the Third Circuit in the Bellow case supra, provided the following insight as to interpreting Article 1091:
"In our view, LSA-C.C.P. Article 1091 has broadened and thus increased the usefulness of the remedy of intervention. No longer is it essential that the intervenor have such a direct interest in the pending action that he will obtain immediate gain or suffer immediate loss. Now it is sufficient that he have a justiciable right `related to or connected with the object of the pending action against one or more of the parties thereto.' To enforce this right he may proceed in one of the three ways listed in the code article." Bellow v. New York Fire & Marine Underwriters, Inc., supra at 353.
We are satisfied that the broad interpretation of Article 1091 as set out in Gallin, and Bellow, supra is correct. See, Washington v. Goldate, 411 So.2d 1224 (La.App. 4th Cir.1982). However, we are somewhat disturbed by the use of the term "justiciable right" in those cases since neither gives a clear definition of same. In the more recent case of Banks v. Rattler, 426 So.2d 362 (La.App. 2nd Cir.1983) our brethren of the Second Circuit in setting forth the intervention requirements, summarized as follows:
"Thus, an intervenor must have a justiciable right related to or connected with the object of the pending action against one or more of the parties." Id. at 365.
In seeking to enforce a community property right for damages to the family car, the Court held that the husband has a justiciable right on behalf of the community and therefore could intervene.
It is apparent that the phrase "justiciable right" had its start with the redacters' comments, and has been consistently referred to as a vital requirement for intervention. Black's Law dictionary defines justiciable as "proper to be examined in courts of justice" and justiciable controversy as "a controversy in which a claim of right is asserted against one who has an interest in contesting it."
We are of the opinion that a "justiciable right" as used in interpreting Article 1091 means the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it.[2] If that right does exist, then, in order to intervene it must be so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor's rights. This connexity requirement is essential.
Applying these guidelines to the facts of the instant case we are of the opinion that the trial court was incorrect in maintaining the exception of no right of action. The causes of action stated and the *1265 remedies sought by Trendwood can be summarized as follows:
1) Participation in the "take or pay" provisions of the Morganza Contract.
2) Seeking enforcement of the contract by Amoco to Trendwood's advantage. That is requiring Columbia to purchase as much gas as required by the contract.
3) Seeking redress or damages for alleged unfair practices by Amoco and Columbia.[3]
As noted earlier, we do not comment on the merits of these various assertions, nor do we comment on the merits of Trendwood's argument that they are third party beneficiaries of the Morganza Contract. These are questions to be decided at the trial on the merits. However, we are of the opinion that Trendwood has satisfied the Codal requirements for intervention. The existence of a separate remedy is not a bar to the intervention as Amoco argues. City of Natchitoches v. State of Louisiana, 221 So.2d 534 (La.App. 3rd Cir.1969). Furthermore, simply because there may be a valid defense on the merits does not warrant the dismissal of an intervention on an exception of no right of action. See, Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App. 3rd Cir.1967). We are convinced that the outcome of the litigation between Amoco and Columbia will have a direct impact on Trendwood's rights under their leases with Amoco. The most obvious impact will be their royalty rights. Certainly they have sufficient justiciable interests related to the enforcement of the gas contract to allow intervention.
DISCOVERY ISSUES
The trial court granted Amoco's request for a protective order with respect to the Morganza Contract. The court found that the requested documents fall within the purview of Article 1426(7) of the Code of Civil Procedure. In addition the Court continued indefinitely certain depositions scheduled by Trendwood.
The discovery issues raised by Trendwood are not the proper subject of an appeal as we find no showing of irreparable injury. La.C.C.P. Article 2083. Furthermore, we adhere to the well established principle that the regulation of discovery is subject to the broad discretion of the trial court.
JURISDICTION ISSUE
Amoco raises the issue that a Court of Appeal does not obtain jurisdiction to review a trial court decision until an order of appeal is granted. We do not dispute that principle, however the record discloses that an order for a devolutive appeal was granted on October 28, 1983. We therefore find no merit to this argument.
Accordingly we overrule the judgment maintaining the exception of no right of action, and remand this matter to the district court for further proceedings consistent with this opinion.
All costs of this appeal are to be paid by Amoco and Columbia.
REVERSED AND REMANDED.
NOTES
[1] See Resor v. Mouton, 200 So.2d 308 (La.App. 4th Cir.1967).
[2] We avoid falling into the legal snare espoused by Justice Holmes who stated "A right without a remedy is like a ghost that stalks the law."
[3] Trendwood alleges that Amoco may have settled the Vermillion Contract to the detriment of the Morganza Contract to their detriment.