laFOIL, Judge.
This appeal challenges the trial judge’s denial of a petition for intervention. After a thorough review of the record, we reverse and remand to the trial court to allow inter-venor to raise the objection of no cause of action.
BACKGROUND
In 1987, the Louisiana Legislature enacted the Offtrack Wagering Law, La.R.S. 4:211 et seq., which allowed certain live horse racing associations to operate offtrack wagering facilities. The legislation authorized only those licensed racing associations conducting the majority of race days at a “pari-mutuel” facility to apply for a license to operate an offtrack wagering facility. La.R.S. 4:214 and La.R.S. 4:211(7). La.R.S. 211(5) defined the term “pari-mutuel facility” to mean any parimutuel race track conducting race meetings during the 1986-1987 racing season and li *1022 censed prior- to the June 30, 1987 effective date of the law. The effect of these provisions is that only those licensed racing associations operating and licensed as of the 1986-1987 racing season are eligible to be licensed as offtrack wagering facilities. See Livingston Downs Racing Association, Inc. v. State of Louisiana, 94-1514 p. 6 (La.App. 1 Cir. 4/7/95); 653 So.2d 1311, 1315.
In 1992, Livingston Downs Racing Association, Inc. (LDRA), obtained a license from the Louisiana Racing Commission to build and operate a race track in Livingston Parish. LDRA applied for a permit to operate ah offtrack wagering facility, but its application was not considered by the Louisiana State Racing Commission. Charging that it had been effectively denied a license to engage in offtrack betting, LDRA filed a suit in October of 1993, which was docketed in the Nineteenth Judicial District Court as 399,563 (hereinafter referred to as the “OTB suit”). LDRA sought injunctive relief and a judgment declaring La.R.S. 4:211(5) and (7) and 4:214(A)(1) unconstitutional. The Fair Grounds Corporation (Fair Grounds), one of the five licensed racing associations ih existence in 1987 and licensed to engage in offtrack wagering pursuant to the challenged regulations, intervened in that litigation. The trial | -judge denied LDRA’s request for injunctive relief and LDRA appealed to this court.
While the OTB suit was pending on appeal in this court, on January 3,1995, LDRA filed a second lawsuit in the 19th Judicial District Court, which was docketed as No. 413,022 (hereinafter referred to as the “Video Poker suit”). This suit attacked the constitutionality of the Offtrack Wagering Law. Named defendants were the State of Louisiana and the five live horse racing associations that were in existence in 1987, and consequently, were allowed by law to engage in offtrack wagering. Fair Grounds was one of the named defendants in the suit.
The defendants in the Video Poker suit filed exceptions, asserting among other things, lack of subject matter jurisdiction, lis pendens and improper cumulation of actions based on the pending OTB suit. The trial judge granted the exception of improper cu-mulation of actions and ordered LDRA to elect which action it would proceed with, and to amend its petition accordingly.
LDRA amended its petition to attack the constitutionality of a provision of the Video Poker law, La.,R.S. 33:4862.4 (redesignated as La.R.S. 27:304 by La. Acts 1996 No. 7, § 3), which establishes the maximum jackpots that may be offered on video poker devices. La. R.S. 33:4862.4 sets a $500.00 limitation on payputs for video poker operators with one exception. That exception sets the maximum payout at $1,000.00 for those establishments where live racing is conducted, as defined by R.S. 4:211(5).
As was the case in the offtrack wagering scheme, the effect of the limitation contained in the video poker law is that only those live horse racing associations operating and licensed as of the 1986-1987 racing season are allowed to offer higher video poker jackpots than other operators. LDRA contends that this limitation violates the equal protection clause of the constitution, is an unconstitutional local or special law, and violates various anti-trust regulations because it confers a special advantage on only those five racing associations actually operating in 1987, while effectively denying that right to LDRA.
|5In its petition, LDRA levied a number of accusations at Fair Grounds, a member of the select group permitted to offer higher video poker jackpots. It averred that Fan-Grounds created an illegal monopoly and used its influence to prevent LDRA from entering into competition with it. LDRA charged that it would demonstrate at trial that La.R.S. 4:211(5) was added to the video poker statute for the sole purpose of preventing it from obtaining financing for its race track in order to perpetuate Fair Grounds’ illegal monopoly.
Fair Grounds filed an exception of no cause of action to LDRA’s supplemental and amending petition, as well as exceptions of no right of action, improper venue, prematurity and lis pendens based on a pending suit filed by LDRA asserting that Fair Grounds created an illegal monopoly.
On March 30, 1995, LDRA voluntarily dismissed, without prejudice, the five racing *1023 associations from the litigation. The remaining defendant, the State of Louisiana, reurged its exceptions of lack of subject matter jurisdiction and lis pendens, and asserted an exception of no cause of action.
The OTB suit and the Video Poker suit were consolidated in the trial court. On March 12,1996, Fair Grounds filed a petition for intervention in the consolidated actions, seeking to join with the State of Louisiana in resisting LDRA’s challenges. The petition set forth that Fair Grounds was allowed to intervene in the OTB suit, and desired to intervene in the Video Poker suit because it raised essentially the same legal issues.
LDRA filed a motion in opposition to Fair Grounds’ intervention request. It asserted that Fair Grounds lacked the requisite interest to intervene in the suit because LDRA is only seeking to strike down that portion of the law that would deny it the right to offer $1,000.00 jackpots at its proposed racetrack. The lawsuit, LDRA argued, would not take away Fair Grounds’ right to offer $1,000.00 jackpots at its establishment; therefore, Fan-Grounds should not be allowed to intervene.
Fair Grounds filed an exception of no cause of action, asserting that LDRA imper-missibly sought to have the court redefine the gambling laws by requesting that only a portion of the challenged provision be stricken. Fair |6Grounds insisted that a court lacks authority to redefine the gambling laws and may not strike only a portion of an interwoven law.
The trial judge denied Fair Grounds’ intervention request, finding that Fair Grounds had no real interest in the litigation. The judge also refused to consider Fair Grounds’ exception of no cause of action, stating that it had come into the OTB litigation as an inter-venor and had to take the proceedings as it found them, and it had no standing to assert the exception in the Video Poker suit.
From this judgment, Fair Grounds appealed the denial of its motion to intervene in the Video Poker suit and the trial judge’s refusal to consider its exception of no cause of action.
FAIR GROUNDS’ RIGHT TO INTERVENE
La.Code Civ. Pro. art. 1091, which establishes the right of intervention, states, in pertinent part:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(2)Uniting with defendant in resisting the plaintiffs demand ...
Article 1091 and the cases construing that provision establish that the requirement for intervention is two-fold: the intervenor must have a justiciable interest in, and a connexity to, the principle action. Niemann v. American Gulf Shipping, Inc., 96-687, p. 6 (La. App. 5 Cir. 1/15/97); 688 So.2d 42, 45, writ denied, 97-0404 (La. 3/27/97); 692 So.2d 397. In Amoco Production Company v. Columbia Gas Transmission Corporation, 455 So.2d 1260, 1264 (La.App. 4th Cir.), writs denied, 459 So.2d 542, 543 (La.1984), the court defined the term “justiciable right” as it is used in the context of an intervention as “the right of a party to seek redress or a remedy against either plaintiff or defendant in the original action or both, and where those parties have a real interest in opposing it.”
The requirement that there be a jus-ticiable cause between the parties is clearly met in this ease. Fair Grounds intervened in the action to join with the State in defending the constitutionality' of the very provision which gives Fair |7Grounds the statutory authority to offer larger video poker jackpots than other businesses. Fair Grounds has an interest in preserving its right to conduct business pursuant to the statute attacked by LDRA.
The heart of the dispute in this case lies in the connexity requirement of La.Code Civ. Pro. art. 1091. The cases hold that the justiciable right must be “so related or connected to the facts or object of the principal action that a judgment on the principal action will have a direct impact on the intervenor’s rights”. Amoco Production Company v. Columbia Gas Transmission Corporation, 455 *1024 So.2d at 1264; Chrysler First Financial Services Corp. v. ZIA Corporation, 542 So.2d 87, 89 (La.App. 1st Cir.1989).
LDRA argues that Fair Grounds does not have any right that will be impacted by a judgment in the suit. It contends that it is merely seeking to have a section of the video poker statute declared unconstitutional — that section which serves to give only five racing associations the right to offer higher payouts on video poker devices.. LDRA posits that if that section of the statute is stricken, Fair Grounds will not suffer any impact, because it will still be able to offer the higher payouts. Thus, it is argued, Fair Grounds should not be .allowed to intervene because a judgment in favor of LDRA will have no effect on Fair Grounds.
Fair Grounds argues that it has a legitimate interest in protecting the statutory video poker scheme which allows the live horse racing industry to derive additional revenue from video poker operations. It insists that the comprehensive video poker law, which limits1 the more expansive video poker operations to then-established race tracks, was enacted for the purpose of preventing new race tracks from opening as “fronts” for expanded video poker operations. As an historical, established race track, Fair Grounds insists it has a clear and legitimate interest in seeing that the present legislative scheme is neither undermined nor repealed, and it should be allowed to intervene in the pending litigation to protect those interests.
. We believe that Fair Grounds has satisfied the two-part test for intervention into the pending litigation. The ultimate relief sought by LDRA is |gto broaden the pool of businesses allowed to offer higher payouts on video poker devices. LDRA seeks to achieve this goal by eradicating the statutory privilege accorded to a small group, of which Fan-Grounds is a member. Indeed, the central issue in this litigation is whether the legislature could legally give a select group of businesses the right to offer higher video poker jackpots. Fair Grounds, as a member of that select group, clearly has an interest in defending the statutory scheme giving it the right to conduct its operations. A judgment expanding the pool of businesses that could offer more expansive video poker operations will no doubt have a direct impact on Fan-Grounds’ economic interests.
Accordingly, we hold that the trial court erred in denying Fair Grounds’ petition for intervention, .and we hereby grant Fan-Grounds’ request to intervene in Docket No. 413,022.
Fair Grounds asks that this court decide the merits of its exception of no cause of action which the trial court refused to consider upon determining that it did not have standing to intervene. Fair Grounds may raise any substantive objections to LDRA’s right to the remedy it seeks in the trial court, and we decline to consider the merits of its exception of no cause of action at this time.
CONCLUSION
Based on the foregoing, the judgment denying Fair Grounds’ petition for intervention is reversed. The case is remanded for proceedings not inconsistent with this opinion. Costs of this appeal are assessed to appel-lees, LDRA.
REVERSED AND REMANDED.