DANIEL L. DYSART, Judge.
Plaintiffs are representatives of a proposed class of persons who filed suit on November 14, 2007, against defendants AMID/Metro Partnership, LLC, the City of New Orleans, Metro Disposal, Inc., AMID Landfill, LLC, Durr Heavy Construction, LLC, Metroplex-Core, Inc., the Gray Insurance Company, and MWH Americas, Inc. (hereinafter referred to collectively as “the City and private defendants.”) Plaintiffs are persons and/or entities who own property in the Almonaster Michoud Business and Industrial District (“AMID”). The land in question is comr prised of city lots in four undeveloped, unimproved subdivisions which exist on paper only. These lots are separated from Almonaster Boulevard by approximately *38 1000 feet of vegetation and marsh. Evidence of ownership exists on the tax records for Orleans Parish.
Plaintiffs filed a motion to have the class certified and to appoint counsel. The subject of this appeal is the judgment granting the class certification. For the following reasons, we amend the class certification and affirm the judgment of the trial court as amended.
Additionally, the private defendants filed an Exception of Prescription in this Court. After review, we deny the exception.
FACTUAL BACKGROUND:
The landfill made the basis of this lawsuit is located in the eastern part of New Orleans, and is commonly referred to as the Old Gentilly Landfill. The tract of land is approximately 200 acres, and has been operated as a landfill by the City of New Orleans (“the City”) since 1964. Originally, the waste dumped at the landfill was comprised mostly of municipal garbage. Plaintiffs allege that this dump was never properly permitted and had no clear boundaries.
In 2002, the City and private defendants submitted a permit application to the Louisiana Department of Environmental Quality (“the LDEQ”) to begin operating the landfill as a Type III landfill, allowing the dumping of construction/demolition debris and wood waste, commonly referred to in the industry as C & D waste. According to defendants, the LDEQ published public notices inviting public comment on the issuance of the permit. It received no requests for public hearing and subsequently issued the permit on December 28, 2004. The Old Gentilly Landfill was scheduled to begin receiving C & D waste in September of 2005. Plaintiffs allege that the “new” landfill was situated on a clay cap that was placed on top of the old landfill. They assert that originally a small portion of the landfill site was owned by the City, but as the landfill grew with debris, the majority of the landfill site was property owned by plaintiffs.
On August 29, 2005, Hurricane Katrina struck the greater New Orleans area. The LDEQ reported to the federal government that 62 million cubic yards of debris, millions of drums and containers of unknown origin and content, 350,000 flooded and/or abandoned vehicles, over 60,000 flooded, damaged and/or abandoned vessels (presumably maritime vessels), over one million units of white goods, over 956,-000 units of electric goods, and 140,000 to 160,000 flooded homes, were left in the wake of the hurricane and subsequent flooding. The Old Gentilly Landfill began receiving Hurricane Katrina debris in October 2005.
Plaintiffs admit that periodic dumping took place on their property over the years, but also maintain that they continued to be billed for and to pay taxes on the property. Plaintiffs became aware of the C & D dumping after Hurricane Katrina.
Plaintiffs allege that the City and private defendants took control of their property in September 2005, and began dumping “massive amounts” of debris without notifying or seeking permission from the property owners or providing compensation for the use of their land.
The plaintiffs seek due process and full compensation by alleging claims for inverse condemnation, trespass, negligence and, reimbursement of products consumed.
The trial court originally defined the class as follows:
All individuals and entities who presently own, or in the period January 1, 2005 to the present have owned, an interest in immovable property of which all or any portion falls within the boundaries of the *39 Gentilly Type |4III Landfill, permitted under Standard Permit No. P0375.
Excluded from the class are: All defendants and any entities owned or controlled by any defendant.
The defendants moved for a new trial or reconsideration of the class certification definition, arguing that the definition of the class must be expanded because the trial court found that at least some kind of taking associated with dumping near the Gentilly site had occurred beginning in 1966. The trial court granted the motion and redefined the class as follows:
All individuals or entities who presently own, or in the period of January 1, 1966 to the present, have owned an interest in immovable property of which all or any portion falls within the boundaries of the Gentilly Type III Landfill, permitted under Standard Permit Number P0375.
Initially, the private defendants argue that plaintiffs’ claims have prescribed. They have filed an Exception of Prescription in this Court. As to the merits of the case, the City and private defendants appeal the certification arguing that individual issues affecting ownership rights preclude certification. The City also argues that it has always maintained exclusive possession, control, management and operation of the Old Gentilly Landfill since 1964.
EXCEPTION OF PRESCRIPTION:
The private defendants have filed a Peremptory Exception of Prescription in this Court. They argue that plaintiffs’ claims are barred by La. R.S. 13:5111, three-year liberative prescription, or, alternatively, thirty-year acquisitive prescription.
A. Standard of Review:
The effect of maintaining a peremptory exception is to dismiss the action. La.Code Civ. Proc. art. 923. The exception of prescription may be raised at any point in the proceeding, including on appeal, prior to a final judgment. La.Code Civ. Proc. art. 2163; Cameron v. Delta Plumbing, 07-0672 (La.App. 4 Cir. 2/13/08), 976 So.2d 343, 346. The party raising the exception bears the burden of proof; however, when prescription is evident on the face of the pleadings, the plaintiff bears the burden of proving that the case has not prescribed. Spott v. Otis Elevator Co., 601 So.2d 1355, 1361 (La.1992).
The private defendants argue that because the trial court made the factual finding that the City’s use of the landfill amounted to a taking for a necessary, public use by at least 1966, these factual findings preclude plaintiffs from seeking compensation because more than three years have elapsed since the taking.
Louisiana Revised Statute 13:5111 provides, in part:
In a proceeding brought against the State of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding ... actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking.
The commencement of the prescriptive period occurs when the alleged land owner acquires constructive knowledge of the taking. See Jungeblut v. City of Kenner, 485 So.2d 974 (La.App. 5 Cir.1986), citing Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (La.1970). Defendants repeatedly point out that “everyone” had knowledge of the Old Gentilly Landfill as far back as 1966. Plaintiffs assert that persons may have *40 been aware of the existence of a landfill, but had no knowledge of the actual footprint of the landfill. Plaintiffs explain that over the years the original footprint of the Old Gentilly Landfill grew as the amount of debris dumped increased, eventually spilling over onto the land owned by plaintiffs.
In 1982, the LDEQ issued an administrative order requiring the cessation of dumping at this site. Despite the order, the City continued to dump until 1986. Plaintiffs concede that no dumping occurred between 1986 and 2005. As part of the administrative order, the City was required to cap the previously dumped on areas, and began to do so in 1986.
Plaintiffs argue that despite being aware that it was seeking to obtain a permit to operate a Type III landfill on property it did not own, the City pushed forward with its plans, contracting with the private defendants to build and administer the project.
At the hearing of defendants’ motion for summary judgment raising the issue of prescription, the trial court considered that the plaintiffs had been and continued to be taxed as owners of a portion of the property occupied by the landfill. The trial court further noted that the so-called public notices which were sent out in connection with the LDEQ permit gave the address of the project as 10200 Almonaster Boulevard, the address of the City auto pound.
Plaintiffs submitted into evidence numerous letters, notes, memoranda, and other lists and writings which indicate that the City claimed ownership to only a small portion of the landfill’s footprint.
Plaintiffs also argue that regardless of what they may have known about the existence of a landfill in the area of their property prior to 2005, the landfill which forms the basis of this lawsuit is the area permitted in 2004 by LDEQ to receive C & D debris, and which began receiving debris in 2005 following Hurricane Katrina.
Based on the record evidence, we find that the plaintiffs continued to own and pay taxes on their individual parcels of property. There is no evidence that plaintiffs had constructive knowledge of dumping on their property prior to 2005. Accordingly, we deny the exception of prescription based on three-year liberative prescription.
The private defendants also argue that the City has openly and continuously possessed the property in question since the 1960’s. Therefore, the City has acquired ownership of the property by either adverse possession of ten years or thirty years without the need of just title or good faith. The defendants urge this Court to overturn a Supreme Court case, Parish of Jefferson v. Bonnabel Properties, Inc., 620 So.2d 1168 (La.1993), because “[s]imply put, the 4-3 majority in Bonnabel Properties was wrong.”[1]
The Bonnabel Properties case involved the interpretation of Article VI, § 23 of the Louisiana Constitution, which grants authority to political subdivisions to acquire property. The provision states: “Subject to and not inconsistent with this constitution and subject to restrictions provided by general law, political subdivisions may acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise.” The Louisiana Supreme Court held that the framers of the Louisiana constitution did not intend *41 to allow political subdivisions to acquire full ownership of property through acquisitive prescription, when the words “or otherwise” were included in Article VI, § 23, of the constitution. We are bound to follow the holding in Bonnabel Properties as it is still good law.
Accordingly, we deny the exception of prescription.
CLASS CERTIFICATION:
A thorough description of the land in question is contained in the factual background section infra. The plaintiffs are persons who acquired land near the landfill, which land was incorporated over time into the footprint of the landfill as debris was dumped outside the original parameters of the City’s property. These parcels of land were acquired in various ways such as by succession, tax sale or purchase from previous owners.
The City and private defendants argue that plaintiffs are not entitled to class certification because their claims do not meet the requirements for class certification as recently clarified in Price v. Martin, 11-0853 (La.12/6/11), 79 So.3d 960.
In Price, the Louisiana Supreme Court re-iterated the standards for analyzing class action certification set forth in La.Code Civ. Proc. art. 591, et seq. The Court explained that a class action is a nontraditional litigation procedure that permits a representative with typical claims to sue a defendant on behalf of, and stand in judgment for, a class of similarly situated persons when the question is one of common interest to persons so numerous as to make it impracticable to bring them all before the court. Id., 11-0853, p. 6, 79 So.3d at 966, citing Dupree v. Lafayette Ins. Co., 09-2602 (La.11/30/10), 51 So.3d 673. The purpose and intent of the class action is to adjudicate and obtain res judicata effect on all common issues applicable not only to persons who bring the action, but also to all others “similarly situated.” Id.
Because the class action is an exception to the rule that litigation be conducted by and on behalf of the individual named parties only, the determination of whether a class action meets the requirements imposed by law requires a “rigorous analysis.” Id.
Parties seeking class certification must affirmatively demonstrate compliance with the rule, i.e., be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc. Price, 11-0853, p. 7, 79 So.3d 960, citing Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011). Errors in deciding class actions should be in favor of and not against 110the maintenance of the class action, because alterations, modifications and even decertification can occur as the case develops. La. Civ.Code art. 592 A(3)(c). However, this general rule should not be substituted for the rigorous analysis required to determine whether the prerequisites of Louisiana’s class action provisions have in fact been satisfied. Price, 11-0853, p. 7, 79 So.3d at 967; also see McCastle v. Rollins Envtl. Serv., 456 So.2d 612, 616 (La.1984).
A reviewing court examines the trial court’s factual findings using the manifest error standard of review. The determination of whether to certify the class is reviewed under the abuse of discretion standard. Brooks v. Union Pacific Railroad Co., 08-2035 (La.5/22/09), 13 So.3d 546, 554. A de novo review is made to determine if the trial court applied the correct legal standard in determining whether to certify the class.
The .five threshold requirements that must be met for class certification are:
*42 One or more members of the class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that join-der of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
La.Code Civ. Proc. art. 591 A.
Additionally, La.Code Civ. Proc. art. 591 B lists requirements that must be met by plaintiffs to qualify as a class action:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
(a) Inconsistent or varying adjudications that would establish incompatible standards of conduct for the party opposing the class; or
(b) Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or would substantially impair/impede their ability to protect those interests; or
(2) The party opposing the class has acted or refused to act on ground generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(8) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other methods for the fair and efficient adjudication of the controversy.
Defendants argue that each plaintiffs claim varies from one owner to the next, the legal remedies vary from one owner to the next, and the defenses to each plaintiffs claim will vary from one owner to the next, making it impossible to lump these claims together as a class action. They claim that the district court erred in certifying the class because the plaintiffs did not and cannot demonstrate commonality, predominance, superiority, typicality or adequacy.
In its reasons for judgment, the district court found that all of the requirements of La.Code Civ. Proc. art. 591 A were met, as well as the requirements of predominance and superiority found at La.Code Civ. Proc. art. 591 B(3). The district court specifically found:
1) There are a hundred [sic] individual lots within the clearly defined footprint of the Gentilly Type III landfill;
(2) Approximately 160 separate individuals or entities receive real estate tax bills for these parcels. The proposed class members share common issues of fact relating to the use of their property as a landfill and the purported knowledge and culpability of all the defendants;
(3)The proposed class representatives have the same claims, with the same operative facts, as the other class members. Proposed class representatives are a cross section of potential class members and are typical. In particular, each of the proposed representatives demonstrated an ownership interest in a parcel or parcels in the footprint of the Type III Landfill.
*43 (4) Common issues far outweigh issues relating to proof of ownership, and a class action is clearly the most efficient and equitable method of proceeding in this matter.
The district court went through each factor to be considered as set forth in La.Code Civ. Proc. art. 591, and applied its factual findings. As to numerosity, the court found that approximately 160 persons or entities which received tax bills from the City owned parcels lying within the footprint of the landfill. The court explained that although there are some multiple interest owners who cannot be readily identified, that fact supported a class action, rather than defeated it as the defendants argued. The defendants argued that the Orleans Parish tax rolls were inadequate proof of actual ownership, and that the purported class members would not be able to prove merchantable title[2]. However, the district court distinguished ownership interest from merchantable title, and explained by way of example, “the class may contain persons who acquired their ownership interest from a deceased parent, but did not open a succession, and thus, have no merchantable title.” Those persons do, however, have an ownership interest.
We find that the plaintiffs have demonstrated a group of aggrieved claimants with verifiable ownership interests in the parcels within the footprint of the landfill. Accordingly, we find that the numerosity factor is satisfied.
As to commonality, La.Code Civ. Proc. art. 591 A(2) requires that a party seeking class certification show that “[t]here are questions of law or fact common to the class.” Any competently crafted petition literally raises common questions. Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). “The mere existence of common questions, however, will not satisfy the commonality requirement.” Price, 11-0853, p. 10, 79 So.3d at 969. “Commonality requires a party seeking certification to demonstrate the class members’ claims depend on a common contention, and that common contention must be one capable of class-wide resolution — one where the ‘determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.’” Id., citing Wal-Mart Stores, Inc., 131 S.Ct. at 2551. The commonality factor requires the existence of a common nucleus of operative facts within the totality of the issues. Dupree v. Lafayette Ins. Co., 09-2602, p. 11 (La.11/30/10), 51 So.3d 673, 682-83.
The trial court determined that there are numerous common questions of law and fact, including:
1) Defendants’ conduct in establishing a landfill on the putative class members’ property.
2) Each of the private defendants is alleged to have participated in a joint venture in the permitting and/or operating of the Gentilly Type III landfill. All defendants are alleged to have known the property was privately owned or to be negligent in that they failed to ascertain the ownership of the property at issue before permitting and participating in dumping on the class members’ property. All defendants are alleged to have taken actions resulting in trespass on the class members’ properties.
3) The intent of each defendant is common to all plaintiffs and informs the selection of remedies. With respect to each defendant and its respective knowledge and intent, proof as to one class *44 member will be proof as to all class members, because all class members’ property was incorporated into the landfill, fenced off and access controlled by 2007 when the area was enclosed by a barbed wire security fencing.
4) Key factual and legal proof will be the same as to all defendants. Such proof will include the public record of the Old Gentilly Dump closure and the proof of plaintiffs’ ownership as reflected in the public records of Orleans Parish.
The trial court determined that individual defenses such as knowledge, proof of ownership, and constructive notice are conjectural and would not defeat certification where the defendants’ breach of a legal duty is common to every member of the class.
Typicality or adequacy of representation requires that the claims of the class representatives be a cross-section of the claims of all class members. La.Code Civ. Proe. art. 591 A(4); Andry v. Murphy Oil, U.S.A., Inc., 97-0793, p. 5 (La.App. 4 Cir. 4/1/98), 710 So.2d 1126, 1129.
The trial court examined the maps provided by the defendants’ expert and located the property owned by the proposed class representatives within that footprint of the landfill. The map with the survey overlay also depicted hundreds of individual parcels within the same footprint. The trial court recognized that although the class members may have acquired their parcels by different methods, the claims of all arise from the same course of conduct by the defendants. Ultimately, the trial court found that the alleged uncompensated taking of immovable property in which each class member has an ownership interest satisfied the typicality requirement.
This same finding satisfies the superiority and predominance of common issues factor. La.Code Civ. Proc. art. 591 B(S). When a common character of rights exists, a class action is superior to other available adjudicatory methods for promoting the basic goals of a procedural device: 1) implementing the substantive law at issue in the case; 2) providing judicial efficiency in carrying out the substantive law; and 3) insuring individual fairness to all parties involved. Oubre v. Louisiana Citizens Fair Plan, 07-66, p. 13 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, 512.
The trial court found that the proposed class representatives identified the predominant legal and factual questions as those surrounding the defendants’ joint efforts to permit a landfill on privately owned property, controlling access to the property with levees, fences and gates, and dumping hurricane refuse without either compensation or permission. The trial court further found that no member of the class had an overriding interest in controlling the means of presentation of proof of the claims. Lastly, the trial court found that the high costs of individual suits would make prosecution of these claims economically unfeasible.
Considering the well-founded reasons expressed by the trial court, we cannot say that it abused its discretion in certifying the class in this matter. However, we find that the trial court manifestly erred in expanding the definition of the class to include entities who owned property from January 1, 1966. The plaintiffs have asserted that the landfill which forms the basis of this lawsuit is the area permitted in 2004 by LDEQ to receive C & D debris, and which began receiving debris in 2005 following Hurricane Katrina. Therefore, we amend the judgment to define the class as:
All individuals and entities who presently own, or in the period January 1, 2005 to the present have owned, an interest in *45 immovable property of which all or any portion falls within the boundaries of the Gentilly Type III Landfill, permitted under Standard Permit No. P0375.
Accordingly, we affirm the judgment of the trial court as amended.
AFFIRMED AS AMENDED; EXCEPTION OF PRESCRIPTION DENIED

. Quoting the private defendants’ Reply Memorandum to Plaintiff's Opposition to Movers’ Peremptory Exception of Prescription.

. See La. Civ.Code art. 531; La.Code Civ. Proc. art. 3653.